Alan L. McNeil, WSBA #7930
Alan McNeil, PLLC
421 W. Riverside Ave., Ste. #660
Spokane, WA 99201
Telephone: (509) 315-8390
Facsimile: (509) 315-4585
Email: *alanmcneil@outlook.com*

Attorney for Respondent

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No: 2:16-MC-00022-MKD |
| Applicant, | RESPONDENT'S OPPOSITION TO SECURITIES AND EXCHANGE COMMISSION'S AMENDED MOTION FOR ENFORCEMENT OF ADMINISTRATIVE ORDER |
| vs. | |
| MICHAEL J. HOOPER, | **Without Oral Argument** |
| Respondent. | Date: October 12, 2016 |
| | Time: 6:30 p.m. |

## I.  INTRODUCTION

With the filing of this complaint, the Securities and Exchange Commission ("the Commission") has assumed the burden 1) to prove that they have brought this lawsuit within the five year actionable constraints of the statute of limitations; and 2) to refute established legal lexicon and the Commission's own codified regulations to substantiate that Michael J. Hooper ("the Respondent") has violated the bar order by both a) conducting business

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel:  509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

with the Commission b) appearing and practicing before the Commission as an accountant; 3) to justify the ex post factum application of ambiguous language contained in a stale consent agreement to forward the fallacy that the SEC has express authority to regulate all non-professionals involved in the back room assemblage of financial records for U.S. public companies; 4) to validate that the negligible fees that the Respondent has earned constitute "unjust enrichment" and are therefore "ill-gotten gains"; and 5) to warrant their statutory authority to impose disgorgement, herein a punitive remedy that crushingly exceeds the applicable civil penalty and is violative of the Respondent's constitutional rights. The SEC has continually interchanged the terms "accountant", "independent accountant", and "independent public accountant" to delineate the SEC designated accounting professionals performing the audit and review assurance engagements for U.S. public companies. "Practicing before the Commission as an accountant" is a role-specific term that requires a licensed professional to hold specific designations. These specific designations include a certified public accountant certificate and most notably, mandatory affiliation with a SEC allied oversight organization. To prevail in this lawsuit, the Commission will need to redefine the true meaning and role of the SEC designated "independent accountant" relative to their own Rules of Practice. They are putting forth a definition

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel: 509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

embellished far beyond the realm of legal analysis, established practice, and the well-settled definition of "accountant" as codified in their own regulations.

To facilitate this expansion, the Commission is seeking disgorgement, a draconian penalty masked as an "equitable remedy". This "equitable remedy" is demanding a forfeiture that is ten-times the proscribed civil penalty for the alleged violation of the bar order. More significantly, the Commission is presuming that by demanding disgorgement they will deny essential constitutional rights necessary for the Respondent's defense.

The Commission's complaint states that the pertinent facts presented in their motion are not contested. Moreover, the SEC is not alleging fraud, investor harm, or any new violations of securities statutes. The Commission is seeking the forfeiture of $77,600 in alleged "ill-gotten gains" earned over a ten-year period. Significantly, the lawful application of the five-year limitations of §2462, will reduce this amount to approximately $35,000. Clearly, the Commission's complaint is a Trojan Horse, a new lawsuit postured as the enforcement of an alleged violation of a seventeen-year old order. The Commission's goal is to expand their jurisdiction by administrative fiat over layperson bookkeepers. The Commission has manipulated their administrative process to graft inferred obligations to existing statutes. Here, the Commission is advocating the expansive regulatory inclusion of

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel: 509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

laypersons performing ministerial bookkeeping duties. This expansion is antithetical to codified statutes, case law, and established practices.

Recently enacted federal legislation has run opposite to the Commission's plan to regulate laypersons engaged in bookkeeping duties. The accounting scandals at the advent of this century moved Congress to pass sweeping legislation for the U.S. public company accounting profession. The Sarbanes Oxley Act of 2002 (SOX), drew a "red line" between the divergent roles of the "independent accountant" and all other individuals performing bookkeeping activities for public companies. SOX barred SEC designated accountants from preparing financial statements and all other forms of bookkeeping for their public company clients. Rigid independence mandates were codified and drafted into the Commission's regulations. Also included in these regulations is a specific definition for the SEC designated "independent accountant" bifurcated from the codified definition of bookkeeping.

SOX also formalized the consent process for the audited and reviewed financial statements filed with the Commission. In addition to the established audit report certifications, named corporate officers were now obligated to provide their consent to these documents with signed certifications.

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel: 509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

Additionally, the Public Company Accounting Oversight Board (PCAOB) was created to provide federal oversight for the "independent accountants" and firms providing assurance services to U.S. public companies. With the creation of the PCAOB, SOX subjected SEC designated "accountants" to external oversight for the first time in history. Conjunctively with SOX, Congress legislatively endowed the SEC with express authority to regulate the "independent accountant" auditors appearing and practicing before the Commission.

Absent from said sweeping changes were any proposals to grant the SEC express authority over any individuals other than the "independent accountants" performing the audits for public companies. Given the mood of Congress, the SEC had every opportunity to solicit Congress for express authorization to regulate bookkeeping laypersons as well. Rather than pursue legitimate lawmaking, the Commission has instead launched a "rearguard action" to expand their authority over these non-professionals. This action is a subterfuge to establish expansive regulatory authority through the courts. The Commission is selectively forwarding these lawsuits against outmatched defendants, and then quashing any chance for a viable defense by imposing the violative remedy of disgorgement.

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel: 509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

## II. ARGUMENT

### A.    The Complaint is Barred by the Statute of Limitations

The Commission is of the belief that they are not subject to the statutory constraints of §2462 or any other time constraints to bring this lawsuit. They are wrong. The Commission is attempting to escape §2462 by labeling its claim of disgorgement as "equitable". The Commission maintains that disgorgement claims are unique and there should be no time limitation whatsoever for the filing of these subject claims. Their position is that disgorgement is not sufficiently punitive to qualify for protection under §2462. This position is inapposite to a) recent Supreme Court and federal appellate court decisions articulating the fundamental policies and vital protections of §2462; b) the synonymic definitions of "disgorgement and forfeiture"; and c) the fact that disgorgement claims and civil forfeitures share identical characteristics and purposes.

The statutes of limitation provision governing the Complaint is 28 U.S.C §2462, titled "Time for commencing proceedings. It reads:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel:  509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

On February 27, 2013 in *Gabelli v. Securities and Exchange Commission*, a unanimous Supreme Court rejected an effort by the SEC to expand the limitations period for civil penalty claims beyond the five-year period set by statute. The SEC argued that its penalty claim accrued when the violation was discovered, not when the violation occurred. The Court disagreed, holding that the SEC's "discovery rule" does not apply to Government agencies, especially those that are in the express business of discovering federal violations. Not specifically naming disgorgement, *Gabelli* held that an action by the government seeking any civil monetary penalty must be commenced within five years of the alleged violation, regardless of the nature of the claim. The Court noted that it was not considering the SEC's prayer for disgorgement and injunction as the SEC had abandoned reliance on equitable tolling principles in earlier proceedings. The Court stated, "But Section 2462 has broad wording and applies to any action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise". *Gabelli,* 568 U.S. at 4, n.2 (2013).

On May 26, 2016, placing heavy reliance on *Gabelli,* the U.S. Court of Appeals for the Eleventh Circuit in *SEC v. Graham* ruled that SEC actions for disgorgement are subject to the five-year limitations period of §2462. Relying on the distinction between "backward -looking" legal remedies and "forward-

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel: 509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

looking" equitable relief, the Court held that the declaratory judgement sought would operate as a "penalty" under §2462 and thus was subject to its five-year limitation period. Additionally, relying heavily on dictionary definitions of "forfeiture" and "disgorgement" the Eleventh Circuit agreed with the district court that for purposes of §2462, the terms forfeiture and disgorgement are effectively synonyms.

Predictably, the Internal Revenue Service (IRS) recently promulgated an Office of Chief Counsel Memorandum finding that disgorgement payments made to the SEC are not deductible pursuant to §162(f)of the Internal Revenue Code (IRC). That section of the IRC disallows deductions "for any fine or similar penalty paid to a government for the violation of any law." In this memorandum the IRS reasoned that disgorgement was synonymous with the term forfeiture and essentially a substitute for a civil penalty.

On August 6, 2006, the SEC was expressly notified of the Respondent's intent to perform internal consulting services for Daybreak Oil and Gas, Inc., a U.S. public company. A consulting agreement was filed and is available on the Commission's EDGAR filing system. Assuming that August 6, 2006, was the earliest date of the violation of the bar order, pursuant to §2462 the filing of this complaint is time-barred by almost five years.

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel:  509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

The Commission will argue that even if §2462 is applicable, the statute of limitations would be tolled by the subsequent bookkeeping jobs that the Respondent accepted. Again the Commission is mistaken. The alleged violation of the bar order was complete upon the first instance of the Respondent's performance with a public company. All elements of the alleged violation were present and complete at that time. Analogous to the two prongs of *Toussie v. United States*, 397, U.S.112 (1970), the language of the statute allegedly violated does not contain explicit language indicating that such a violation would be considered "continuing" in nature. Secondly, there is no evidence that Congress ever intended that the alleged violation would fall under a "continuous violation doctrine"; see *United States v. Harris*, 919 F. Supp.2d 702 (E.D. Va. 2013) (holding that securities fraud is not a continuing violation).

Based on the Commission's own allegations and the arbitrary time-frame that they have established, the Commission's cause of action against Hooper arose sometime prior to 2005, doubling the statutory time constraints of § 2462. The Complaint pursuant to 28 U.S.C. § 2462 is time-barred as a matter of law. The Supreme Court decision of *Gabelli* and the subsequent defining decision of *Graham* were both decided prior to the filing of this Complaint, yet the Commission still chose to pursue this action. Accordingly,

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel:  509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

the Respondent is entitled to reimbursement of his legal costs and fees for the defense of this meritless action under the Equal Access to Justice Act, 28 U.S.C. §2412.

### B. The Respondent Did Not Appear or Practice Before the Commission as an Accountant Pursuant to Rule 102(f)

In 1995, Michael J. Hooper was a newly licensed certified public accountant in the State of Washington and a member of the AICPA SEC Public Practice Section when he audited the financial statements of the Over-the-Counter Bulletin Board penny stock company, United Fire Technology, Inc. ("UFTI"). This was the Respondent's first and only audit and attestation engagement as a SEC designated "independent accountant."

In 1997, the SEC filed a federal complaint against officers of UFTI including Hooper. The Commission's complaint alleged an illegal scheme to raise money by the principals of UFTI. The complaint alleged that Hooper was culpable in that his audited financial statements contained material false and misleading statements. These misleading statements consisted of the omission of related party transactions and the incorrect recording of the outstanding balance of common shares at the balance sheet. There were no inflated assets, income, or other items as beneficial to the Company recorded by Hooper. The Company's net assets were written down to a de minimis

RESPONDENT'S OPPOSITION TO SEC'S
AMENDED MOTION FOR ENFORCEMENT . .
Page 10 of 21

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel: 509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

amount and there were no revenues in the financial statements prepared and audited by the Respondent.

Two years later, the Respondent settled the Commission's case against him, while neither agreeing nor denying the allegations in the Complaint. As part of the settlement, the Respondent agreed to refrain from appearing or practicing before the Commission as an "accountant" pursuant to SEC Rule of Practice 102(e), 17C.F.R. § 210.102(e) for a period of five years. At the conclusion of the five-year suspension Hooper had the option to seek reinstatement from the Commission to resume practicing before the Commission as an "accountant." The Respondent did not seek reinstatement with the Commission.

Hooper has not held a certified public accountant certificate or license since 1995. He has not held or applied for any professional licenses, certifications, or designations since the signing of the consent order with the SEC in November of 1999. Subsequent to that signing, he has worked as a self-employed independent contractor; preparing tax returns, and providing consulting and bookkeeping services for small businesses. To a limited extent some of the bookkeeping services were for microcap U.S. public companies, better known as penny-stock companies. The majority of these public companies had little to no financial activity. Further there is no evidence that

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel:  509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

any of these companies engaged in fraudulent activity as a result of Hooper's bookkeeping activities.

The alleged violation contained in this Complaint is premised exclusively on the Commission's erroneous position that the aforementioned bookkeeping duties are indistinguishable from the attestation responsibilities entrusted to SEC designated "independent accountants". The SEC is erroneously forwarding that this agency has been endowed with the statutory authority to regulate all laypersons involved in any form of assemblage of financial records for U.S. public companies.

The SEC has used the terms "accountant" synonymously with the terms "independent accountant", "public accountant", and "auditor" from the passing of the Securities Act of 1934 to the enactment of the Sarbanes Oxley Act of 2002. During this 68 year period the SEC did not promulgate or set a regulatory or precedential definition for the term "accountant" in the Commission practice context. In 2002, pursuant to the enactment of SOX the term "accountant" was formally defined in the SEC practice context, codified in Regulation S-X and applied to Title 17 of the Code of Federal Regulations.

With this Complaint the Commission is pursuing an unconstitutional ex post facto attempt to capitalize on the ambiguous language contained in the boiler plate consent order that the Respondent signed in November of 1999.

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel:  509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

As mentioned above, at the time of the signing of the consent order there was no promulgated definition in existence for an "accountant" specifically practicing before the Commission.

Prior to the date of the consent order the only attempt to define the parameters and definition of a SEC designated "accountant", was an Administrative Law Judge ("ALJ") decision dismissing a Rule 102(e) proceeding against a non-licensed accountant. *Order Dismissing Rule 102(e) Proceeding* as to Respondent Robert W. Armstrong, III, Admin. Pro. 3-9793 (July 2, 1999). The ALJ clarified that "it could not be more clear that the Commission uses the term 'accountants' as a short form of persons licensed to practice as accountants as pertains to Rule 102(e). *Armstrong* at 3(quoting Rule 102(e)(1)(iv). The ALJ also articulated that the mere preparation of financial documents for a public company did not grant the SEC jurisdiction over that preparer. *Armstrong* stood as the only guidance available until the Commission formalized the accountant definition in Regulation S-X. *Armstrong* was appealed and overturned by the Commission in 2005.

To determine the Commission's definition of an "independent accountant" prior to 2002, it is helpful to examine the legislative intent of Congress in the wake of the Great Depression. Following on the heels of the 1929 stock market crash, the accounting profession narrowly averted a federal

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel: 509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

takeover of the auditing of publicly traded companies. Influential leaders of the accounting profession were able to convince Congress that the accounting profession was capable of providing independent attestation services that would protect the investing public.

In further response to the financial crash, President Roosevelt signed into law two major pieces of financial reform legislation, the Securities Act of 1933 and the Securities Exchange Act of 1934 (the Securities Acts). Embracing a full disclosure philosophy, the 1933 Act was the first federal legislation to regulate the offer and sale of securities. The 1934 Act created the Security and Exchange Commission and set a framework for the regulation of the secondary trading of securities. The Securities Acts, as implemented by the SEC, required all new and continuing registrants to have their financial statements audited by "independent accountants." The 1934 Act also established the SEC's administrative jurisdiction over periodic financial reporting and the "independent accountants" certifying the audited and reviewed financial statements contained in those periodic reports. The legislative intent of the requirement of an "independent accountant's" preparation, certification, and consent for registration filings was clearly demarcated in § 7 of the 1933 Act, as follows:

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel: 509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

> If any **accountant,** engineer, or appraiser, or any person whose professional gives authority to a statement made by him, is named as having prepared or certified any part of the registration statement, or is named as having prepared or certified a report or valuation for use in connection with the registration statement, the **written consent** of such person shall be filed with the registration statement. If any such person is named as having prepared or certified a report or valuation (other than a public official document or statement) which is used in connection with the registration statement, but is not named as having prepared or certified such report or valuation for use in connection with the registration statement, the **written consent** of such person shall be filed with the registration statement unless the Commission dispenses with such filing as impracticable or as involving undue hardship on the person filing the registration statement. *[Emphasis Added]*

The term "practicing before the commission" was defined in the SEC Rules of Practice, Rule II(g) five years after the enactment of the 1933 Act. Mirroring the language and legislative intent of § 7 of the 1933 Act, this definition states:

> For the purposes of this rule, "practicing before the Commission" shall include the preparation of any statement, opinion or other paper by any attorney, **accountant,** engineer or other expert, **filed with the Commission** in any registration statement, application, report or other document **with the consent** of such attorney, **accountant,** engineer or other expert. *[Emphasis Added]*

The accountant's consent requirement contained in the 1933 Act and then echoed in the definition of "practicing before the commission" distinguishes the accountant as the "independent accountant" attesting to the registrant's financial statements. The above definition from 1938 does provide

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel: 509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

an accurate depiction of the role of the SEC designated "independent accountant" prior to the enactment of SOX. Prior to SOX, the independent accountant routinely performed tasks and prepared documents that the SEC now defines as prohibited "bookkeeping' practices. The inflexible independence rules of Sarbanes Oxley now strictly proscribe the "independent accountant's" preparation of any document filed by the registrant with the Commission. Over the subsequent seventy-seven years, despite the sweeping changes to the roles and responsibilities of the SEC designated "independent accountant", the language of the original section of Rule II(g) (now Rule 102(f)) of the Rules of Practice remains unchanged.

In 2002, the well settled definition of "independent accountant" (in the SEC practice context) was delineated with the Commission's first codified definition of an accountant. This definition, accentuating the vital independence aspect of an "accountant practicing before the Commission", was added to Regulation S-X under Part 210 §210.2-01, Qualifications of Accountants. This same definition was applied to the Code of Federal Regulations at Title 17 CFR Chapter II §210.2.01(f)(1). That definition reads:

> **Accountant,** as used in paragraphs (b) through (e) of this section, means a registered public accounting firm, **certified public accountant or public accountant** performing services in connection with an engagement **for which independence is**

RESPONDENT'S OPPOSITION TO SEC'S
AMENDED MOTION FOR ENFORCEMENT . .
Page 16 of 21

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel: 509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*

**required.** References to the accountant include any accounting firm with which the "certified public accountant" or "public accountant" is affiliated. *[Emphasis Added]*

In stark contrast to the codified definition of the "independent accountant", SEC Release No. 33-8183, File No. 57-49-02 elucidates the definition of "bookkeeping" that is also codified in Title 17 CFR Chapter II Section 210.2.01(c)(4)(i):

> The rules utilize the previous definition of bookkeeping or other services, which focuses on the provision of services involving: (1) maintaining or preparing the audit client's accounting records, (2) preparing financial statements that are filed with the Commission or the information that forms the basis of financial statements filed with the Commission, or (3) preparing or originating source data underlying the audit client's financial statements. **Our experience with this definition demonstrates that the concept of bookkeeping and other services is well understood in practice.** *[Emphasis Added]*

The SEC has never been granted Congressional authority to regulate bookkeepers as defined by the above statute. Neither Title 17 nor Regulation S-X extend SEC administrative jurisdiction over the many hundreds of thousands of individuals providing bookkeeping or financial consulting services for U.S. public companies. Plainly, the SEC does not provide administrative options for laypersons to apply to, or be reinstated "to appear or practice as a bookkeeper before the Commission".

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel:  509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

The SEC with their own rules and regulations have now clearly provided clear definitions as well as an unambiguous demarcation between, "accountants appearing and practicing before the SEC" and layperson bookkeepers. Moreover, statutory construction, legislative intent, and common practice have forged a wide gap between the qualifications and responsibilities of these two positions. Predicated on existing statutory definitions it would not be possible for an individual to "practice before the Commission as an accountant", while performing ministerial bookkeeping duties.

## C. The Complaint's Attempt to Seek Disgorgement is Unconstitutional

The Complaint characterizes the Respondent's legitimate bookkeeping fees as "ill-gotten" gains. This term is the prompt that the Commission consistently employs to argue the remedy of disgorgement. The Commission may only obtain disgorgement if they can prove that the Respondent received "ill-gotten gains", and that the receipt of those gains were directly connected to a violation of the federal securities laws. There were no gains, ill-gotten or otherwise. The Respondent received modest fees for performing repetitive bookkeeping and ministerial tasks for penny stock companies. Secondly, there were also no violations of the federal securities laws. There is only an

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel: 509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

attempt by the SEC to redefine the parameters of the order to justify this action and the imposition of disgorgement.

Additionally, the consent order was unconstitutionally vague and ambiguous on its face and otherwise failed to give the Respondent adequate notice that he could be exposed to the perils of disgorgement.  In United States v. Wenger, 427 F.3d 840, 851; 2005 U.S. App. (10th Cir.) 2005, in a case involving federal securities laws, the Tenth Circuit Court of Appeals held that a law is unconstitutionally vague if it fails to enable ordinary people to understand what conduct it prohibits or if it encourages arbitrary and discriminatory enforcement. Clearly, the Commission is pursuing arbitrary and discriminatory enforcement of an ambiguous consent order with this Complaint.

### III. CONCLUSION

Our constitutional system is based on the principle of the separation of executive, legislative, and judicial powers. Yet, federal regulatory agencies, such as the SEC innately combine the three powers of government. The Commission performs the legislative function when they promulgate rules, the executive function when they enforce these rules, and the judicial function when they institute hearings before their own administrative law judges and appeal these decisions before the Commission itself. Inherently, the profound

RESPONDENT'S OPPOSITION TO SEC'S
AMENDED MOTION FOR ENFORCEMENT . .
Page 19 of 21

Alan L. McNeil - Attorney at Law
421 W. Riverside Ave., Ste. 660
Spokane, WA 99201
Tel:  509.315-8390
Fax: 509.315-4585
Email: alanmcneil@outlook.com

powers of the SEC violate the principal of separation of powers. When discharged in an unlawful fashion, these immense powers bolster oppressive and overreaching agendas. The federal courts stand as the public's last bastion to curb this abuse by ruling judiciously when the SEC brings actions far exceeding their statutory authority.

Accordingly, the Respondent asks the Court to dismiss the Complaint filed by the Plaintiff, Securities and Exchange Commission with prejudice and without leave to amend on  the grounds that the Complaint (A) is barred by the statute of limitations; (B) is an unconstitutional ex post facto attempt to enforce an ambiguous consent order that fails to state a claim upon which relief may be granted; (C) is pursuing the unsupported remedy of disgorgement and harbors the specific intent to deny inalienable rights critical for the Respondent's defense.

DATED this 19th day of September 2016.

s/ Alan L. McNeil
ALAN L. McNEIL, WSBA #7930
Attorney for Respondent

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel:  509.315.8390*
*Fax: 509.315.4585*
*Email: alanmcneil@outlook.com*

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of September, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Susan F. Lamarca                    *lamarcas@sec.gov*
Robert J. Durham                    *durhamr@sec.gov*
*Attorneys for Applicant*

Alan L. McNeil, Esq.                *alanmcneil@outlook.com*
*Attorney for Respondent*

Michael J. Hooper                   *michaelh@spk-acct.com*
*Respondent*

Jana Dubes                          *jdubes@cameronsutherland.com*
*Paralegal for Alan L. McNeil*

s/ Jana Dubes
JANA DUBES

*Alan L. McNeil - Attorney at Law*
*421 W. Riverside Ave., Ste. 660*
*Spokane, WA 99201*
*Tel:  509.315-8390*
*Fax: 509.315-4585*
*Email: alanmcneil@outlook.com*